UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LAVON TAYLOR, | ) | |
| | ) | CASE NO. 3:16-cv-00402(JCH) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FEDEX GROUND PACKAGE | ) | |
| SYSTEM, INC., | ) | |
| | ) | April 14, 2017 |
| Defendant. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Lavon Taylor in his Amended Complaint alleges violations of the Americans with Disabilities Act (42 U.S.C. §12101)(ADA). Specifically, Plaintiff asserts a claim of discrimination (First Count) and failure to accommodate (Second Count). However, Plaintiff was not disabled pursuant to the ADA. Nor has Plaintiff identified any accommodation which he requested and which FedEx Ground denied. Accordingly, Defendant FedEx Ground Package System, Inc. ("FedEx Ground") moves for summary judgment on all of Plaintiff's claims.

Plaintiff's alleged disability is a torn ACL he suffered in March 2010. As the evidence demonstrates, this injury did not substantially impair any of Plaintiff's major life activities. Courts that have assessed injuries like Plaintiff's, even after the 2008 Amendments to the ADA, have similarly held that it is not a disability under the ADA. Additionally, there is no evidence that Plaintiff requested any accommodation that was denied. For these basic reasons, there are no genuine issues of material fact and Plaintiff's claims should be dismissed.

## I. STATEMENT OF UNDISPUTED FACTS

The following facts of materiality are undisputed. Certain non-material facts, likewise undisputed, are included in this summary to provide context.

A.     **Background**

1.  **Plaintiff's employment with FedEx Ground**

Defendant hired plaintiff as a part-time package handler on July 30, 2007 (Taylor Depo. Ex. 4 p. FXGLT184; Esposito Declaration ¶4.a.)[1].  Plaintiff had two terms of employment with FedEx Ground – from July 30, 2007 to June 18, 2010 and from October 6, 2010 to January 4, 2011. (Taylor Depo Ex. 4 pp. FXGLT184, 185, 194, 195, 199; Esposito Declaration ¶4.c.).  For the time that Taylor worked for FedEx Ground in 2010, Taylor was a part time package handler. (Taylor Depo. Ex. 4 p. FXGLT192-199; Esposito Declaration ¶4.d.)

2.  **Plaintiff's second job at Yankee Clipper**

From 2010 to 2011, Plaintiff held a second job at a separate company, Yankee Clipper, in addition to his job at FedEx Ground. (Taylor Depo. 18:7-9; 23:6 – 21).  At Yankee Clipper, Plaintiff was working full-time hours. (Taylor Depo. 17:9-24).  He drove a forklift to load and unload trucks, helped sort books, and performed minor maintenance on the forklift. (Taylor Depo. 18:7 – 22:12).

3.  **Plaintiff's knee injury**

In or about March 2010, plaintiff suffered a knee injury while playing basketball.  (Taylor Depo. 24:8-24; P.63).  The doctor diagnosed an ACL tear in plaintiff's right knee (Taylor Depo. 28:4-11; P64).  According to Plaintiff's medical records, he tore his ACL on March 19, 2010. (P63).

Plaintiff was working at both Yankee Clipper and FedEx Ground at the time of his knee injury. (Taylor Depo 23:6 – 25:21; Taylor Depo Ex. 5, p. FXGLT323; see Esposito Declaration ¶4.e.).  Plaintiff testified that he took one to two weeks off of work from Yankee Clipper due to

---

[1] FedEx Ground attaches the referenced documents and testimony to its Local Rule 56(a)(1) Statement of Undisputed Material Facts.

his knee injury. (Id.).  Plaintiff also continued working at FedEx Ground immediately after his knee injury. (Taylor Depo. Ex. 5, p. FXGLT323 – 326; see Esposito Declaration ¶4.e.).

Immediately after tearing his ACL, Plaintiff treated his knee with medication and icing. (Taylor Depo. 27:19-23; 29:7 – 30:9).  After roughly two weeks, Plaintiff went back to work at Yankee Clipper at a full schedule. (Taylor Depo. 29:19 – 30:9).  Plaintiff did not request any accommodation when he returned to work at Yankee Clipper. (Id.).  Plaintiff returned to work at FedEx Ground shortly (approximately two weeks) after his knee injury. (Taylor Depo. Ex. 5 pp. FXGLT322-326; see Esposito Declaration ¶¶4.f. and 4.g.).

Dr. Veltri examined Plaintiff on March 26, 2010, a week after the injury. (P63).  Dr. Veltri's assessment was that Plaintiff tore his ACL. (Id.). Dr. Veltri's plan for Plaintiff was that "[t]he patient was given home exercise program involving quadriceps strengthening and straight leg raising and knee flexion and extension exercises.  He was instructed to wear his knee immobilizer for protection."  Further, Dr. Veltri stated "I have explained to him most likely he should restrain from his sports…". (Id.).  Dr. Veltri examined Plaintiff again on April 2, 2010 at which time Plaintiff had an MRI. (P64).  The medical records from this April 2, 2010 visit note that "[Plaintiff] still complains of pain and swelling in his knee.  He denies any instability or giving way.  He denies any lower extremity dysesthesias, or any bowel or bladder complaints." (Id.).  Additionally, Dr. Veltri "explained to the patient he should continue with home exercises to regain strength and range of motion.  Ultimately, he should consider ACL reconstruction due to his physical job." (Id.).

### 4.  Plaintiff's terminations from FedEx Ground

Plaintiff stopped attending work at FedEx Ground on or about June 18, 2010 – almost three months after he injured his knee.  (Taylor Depo. Ex. 5, p. 326-327; see Esposito Declaration ¶4.f.).

FedEx Ground terminated plaintiff on July 11, 2010.  (Taylor Depo. Ex. 4 p. FXGLT194; Esposito Declaration ¶4.g.).  The effective date of plaintiff's termination was June 18, 2010. (Id.).  Plaintiff continued to work at Yankee Clipper.  (Taylor Depo 23:6 – 25:21; Taylor Depo. 34:16-18; Taylor Depo. 31:25 – 32:25).

After learning of his termination from FedEx Ground, plaintiff reapplied for a part-time package handler position with FedEx Ground.  (Taylor Depo. 77:3 – 80:24).  Plaintiff again started as a package handler on October 6, 2010. (Taylor Depo. Ex. 4 p. FXGLT195-196; Esposito Declaration ¶4.h.).  Plaintiff again stopped attending work on or about December 27, 2010. (Taylor Depo. 111:8-12; 113:11 – 114:23; Taylor Depo. Ex. 5 p FXGLT330; see Esposito Declaration ¶4.e).  FedEx Ground terminated plaintiff in early 2011 with an effective date of January 4, 2011.  (Taylor Depo. Ex. 4 p. FXGLT199-200; Esposito Declaration ¶4.j.).[2] (footnote references are not superscripted due to a software issue).

### 5.  Plaintiff's Irrelevant Surgery and Post-Surgery Condition[3]

After his last day attending work at FedEx Ground, Plaintiff underwent surgery to repair his torn ACL on December 28, 2010.  (Taylor Depo. 99:2-7; P00066).  Dr. Veltri performed the surgery (Id.).  Dr. Veltri examined plaintiff the day after the surgery.  (P00069).  He noted that "At present time, he is doing quite well.  He has no major complaints."  (Id.).  On January 10, 2011, plaintiff returned to Sports Medicine and Orthopedic Surgery, PC for suture removal. (P00070).  At that time, the physician's assistant noted "The patient denies any significant concerns or complaints or episodes or intractable pain.  The patient states he is progressing with home exercises

---

[2] FedEx Ground terminated Plaintiff, both times, for entirely appropriate reasons.  Put simply, Plaintiff stopped attending work.  Plaintiff did not request leave either in the summer of 2010 or in December/January 2010/2011 to account for his failure to attend work.  However, given the basis for this motion, those detailed facts that establish that FedEx Ground terminated Plaintiff for nondiscriminatory reasons, and was in fact justified in terminating Plaintiff both times, are not set forth in these papers.
[3] As discussed in greater detail below, evidence of Plaintiff's physical condition related to the ACL reconstruction surgery and thereafter are irrelevant to this case because they occurred after any alleged adverse employment action.

and has maintained use of nonweightbearing status of his knee brace.  The patient denies any significant numbness, fevers, chills, or any further issue at this time." (Id.).  Plaintiff followed up with Sports Medicine on February 18, 2011. (P00071). The physician's assistant noted "The patient currently is progressing well with physical therapy and making good gains in regard to his range of motion and strength.  He denies any significant pain, numbness, feelings of instability, or any further issue or concern at this time." (Id.).  It was further noted "[t]he patient is stable status post right knee ACL reconstruction." (Id.).  And notably, "The patient will continue with physical therapy at this time.  He will also be given a note allowing him to return to work at a desk with desk duty with restrictions of no squatting, lifting greater than five pounds, crawling, climbing, kneeling, bending, twisting or any strenuous exercises." (Id.).

Later in 2011, Plaintiff went to work at IFCO, a pallet warehouse. (Taylor Depo. 33:9 – 34:23).  Plaintiff was a full time forklift driver. (Id.).  Plaintiff's job at IFCO was a physical job that at times required Plaintiff to manually lift the pallets. (Taylor depo 35:14 – 21).

## II.    LAW & ARGUMENT

"Rule 56(a) of the Federal Rules of Civil Procedure provides that '[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  Youngs v. Fusaro, 179 F. Supp. 3d 198, 203 (D. Conn. 2016).

More specifically, "[u]pon proper motion, Rule 56(c) of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial.  Thus, the moving party is entitled to a judgment as a matter of law because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  El-Nahal v. Yassky, 835 F.3d 248, 252 (2d Cir. 2016) (internal citations and quotations omitted).  It is "beyond cavil" that summary judgment is appropriate even in fact-intensive employment claims. See Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 466 (2d Cir. 2001). "Even where facts are disputed, in order to defeat summary judgment, the nonmoving party must offer enough evidence to enable a reasonable jury to return a verdict in its favor." Byrnie v. Town of Cromwell Bd. Of Educ., 243 F.3d 93, 101 (2d Cir. 2001).  The nonmoving party may not merely rest on "conclusory allegations or unsubstantiated speculation." Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

"The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute." Holten v. Standard Parking Corp., 98 F. Supp. 3d 444, 449 (D. Conn. 2015)(internal citations and quotations omitted).  "A 'material fact' is one whose resolution will affect the ultimate determination of the case." Gula v. Kohl's Dep't. Stores, Inc., No. 3:12cv01718, 2015 U.S. Dist. LEXIS 119494, at *16 (D. Conn. Sept. 8, 2015).  "A dispute concerning material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Jarnutowski v. Pratt & Whitney, 103 F. Supp. 3d 225, 231 (D. Conn. 2015) (internal quotation omitted).  "If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor." Zurenda v. Cardiology Assocs., P.C., No. 3:10-CV-0882, 2012 U.S.

Dist. LEXIS 68633, at *2 (N.D.N.Y. May 16, 2012)(citing <u>Matsushita Elec. Indus. Co. v. Zenith</u> <u>Radio Corp</u>., 475 U.S. 574, 587 (1986).

"The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to defeat a summary judgment motion." <u>Fabrikant v. French</u>, 691 F.3d 193, 205 (2d Cir. 2012) (internal citations and quotations omitted). Likewise, "[s]ummary judgment against a plaintiff in an employment discrimination case is appropriate if the plaintiff offers only unsupported assertions, conjecture or surmise, or conclusory statements to support an essential element of her case." <u>Pathan v. Connecticut</u>, 19 F. Supp. 3d 400, 412 (D. Conn. 2014) (internal citations omitted). <u>See also</u> <u>Jarnutowksi</u>, 103 F. Supp. 3d at 231-32 (observing in the context of an age discrimination case that: "A dispute concerning material fact is not created by a mere allegation in the pleadings, or by surmise or conjecture. Also, conclusory allegations will not suffice to create a genuine issue.") (internal citations and quotations omitted).

Because plaintiff cannot adduce evidence sufficient to support one or more elements of his claims, summary judgment is appropriate as to all of Plaintiff's claims.

### A.     <u>Plaintiff's Claims</u>

Plaintiff's First Count alleges that FedEx Ground discriminated against the Plaintiff due to Plaintiff's alleged disability in violation of the Americans with Disabilities Act. (Doc. #10, Amended Complaint at p. 5). Plaintiff's Second Count alleges that FedEx Ground failed to accommodate Plaintiff in violation of the ADA. (<u>Id</u>. at p.7).

### 1.   ADA Discrimination Claim

The ADA prohibits discrimination against a "qualified individual [with a disability] on the basis of disability" in the "terms, conditions, and privileges of employment" 42 U.S.C. § 12112(a). "To establish a *prima facie* case of discrimination under the ADA, Plaintiff must show that: (1)

her employer is subject to the ADA, (2) she is disabled within the meaning of the ADA, (3) she is otherwise qualified to perform the essential functions of her job with or without reasonable accommodation, and (4) she was discharged because of her disability." Zurenda, 2012 U.S. Dist. LEXIS 68633, at *18-19 (citing Jacques v. DiMarzio, Inc., 386 F.3d 192, 198 (2d Cir. 2004)).

### 2. ADA Failure to Accommodate Claim

A plaintiff asserting a failure to accommodate claim under the ADA must show that "(1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of THE job at issue; and, (4) the employer has refused to make such accommodation." Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 (2d Cir. 2006)(citing Rodal v. Anesthesia Group of Onondaga, P.C., 369 F.3d 113, 118 (2d Cir. 2004)).

Therefore, an essential element of each of Plaintiff's claims is that he is disabled under the ADA.

### 3. Plaintiff did not have a disability under the ADA

The ADA, as amended by the ADA Amendments Act of 2008, defines a disability as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. §12102(1)[4]. A "physical or mental impairment" is defined as: "[a]ny physiological disorder, or condition … or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal …". 29 C.F.R. §1630.2(h).

"Major life activities" include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, …" as well as major bodily functions. 42 U.S.C. §12102(2). Regulations implementing

---

[4] The ADA also includes in the definition of "disability" having a record of such impairment or being regarded as having such an impairment. *Id.*

the ADAAA further explain that "[a]n impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. §1630.2(j)(1)(ii).  Furthermore "not every impairment will constitute a disability within the meaning of this section." Id.

Plaintiff's torn ACL simply does not qualify as a disability under the ADA.  The evidence shows that Plaintiff suffered a somewhat common, temporary, non-chronic knee injury. Temporary, non-chronic knee injuries with no long term or permanent impact like Plaintiff's ACL injury are not disabilities under the ADA.  See Murray v. Sysco Corp., No. 96-CV-1073, 1998 U.S. Dist. LEXIS 4503 at *14-16 (N.D.N.Y. Apr. 2, 1998)(holding plaintiff's knee condition that required surgery and which limited plaintiff's ability to walk for some period of time was a transitory impairment that failed to rise to the level of a disability under the ADA); Zurenda, 2012 U.S. Dist. LEXIS 68633, at *21-22 (stating "[c]ourts within this circuit and the vast majority of courts elsewhere which have considered the question, have held that temporary disabilities do not trigger the protections of the ADA because individuals with temporary disabilities are not disabled persons within the meaning of the act.") (quoting Graaf v. North Shore University Hospital, 1 F. Supp.2d 318, 321 (S.D.N.Y. 1998); see e.g., Adams v. Citizens Advice Bureau, 187 F.3d 315, 316-17 (2d Cir. 1999) (a temporary impairment of the neck, back and knee did not rise to the level of a disability under the ADA).

More to the point, several courts faced with this very same injury, even after the amendments to the ADA, have decided that ACL tears (and the resultant surgery and recovery) do not constitute an ADA disability.  Morgan v. Goodwill Indus. of Denver, Inc., No. 12-cv-274, 2013 U.S. Dist. LEXIS 178769, at *14-16, (D.Co. Jul. 19, 2013)(holding plaintiff who suffered a torn ACL in April 2010, thereafter underwent ACL repair surgery and had resultant temporary

work restrictions for five months related to her ACL injury was not disabled under the ADA); Clark v. Western Tidewater Regional Jail Authority, No. 2:11cv228, 2012 U.S. Dist. LEXIS 9497, at *4, 18-20 (E.D.Va. Jan 26, 2012)(holding that a torn ACL and surgery which prompted a doctor's note that plaintiff could "not participate in excessive exercise" was not a disability under the ADA, as amended; Koller v. Riley Riper Hollin & Colagreco, 850 F. Supp. 2d 502 (E.D. Pa. 2012)(granting defendant's motion to dismiss after assessing the amendments to the ADA and holding that plaintiff who tore ACL, underwent surgery, and took medications, suffered pain and had difficulty moving and driving was not a disabled); cf. Tish v. Magee-Women's Hospital of the Univ. of Pittsburgh Med. Ctr., No. 06-820, 2008 U.S. Dist. LEXIS 87010 (W.D. Pa. Oct. 27, 2008)(where plaintiff experienced dramatically greater physical limitations from an ACL injury and surgery than those present in this case, an ADA disability may be found).

By his own testimony, Plaintiff was not disabled. He tore his ACL on March 19, 2010. At his deposition, he said he took, at most, two weeks off of his job at Yankee Clipper after he tore his ACL. After the two weeks, he returned to work full time at Yankee Clipper and he requested no accommodations. As is evident from his job responsibilities, Plaintiff needed to walk and stand for his job at Yankee Clipper. Additionally, Plaintiff returned to work at FedEx Ground shortly after he tore his ACL. Clearly, Plaintiff was not substantially limited in walking, standing or any other major life activity after he tore his ACL.

Plaintiff's medical records further indicate that Plaintiff was not disabled. Dr. Veltri examined Plaintiff on March 26, 2010, a week after the injury. (P63). Dr. Veltri's assessment was that Plaintiff tore his ACL. (Id.). Dr. Veltri's plan for Plaintiff was that "[t]he patient was given home exercise program involving quadriceps strengthening and straight leg raising and knee flexion and extension exercises. He was instructed to wear his knee immobilizer for protection."

Further, Dr. Veltri stated "I have explained to him most likely he should restrain from his sports…". (Id.). Dr. Veltri examined Plaintiff again on April 2, 2010 at which time Plaintiff had an MRI. (P64). This would have been right around the time that Plaintiff returned to work at Yankee Clipper on a full schedule and with no accommodation. The medical records from this April 2, 2010 visit note that "[Plaintiff] still complains of pain and swelling in his knee. He denies any instability or giving way. He denies any lower extremity dysesthesias, or any bowel or bladder complaints." (Id.). Additionally, Dr. Veltri "explained to the patient he should continue with home exercises to regain strength and range of motion. Ultimately, he should consider ACL reconstruction due to his physical job." (Id.).

Based on this evidence, it is clear that Plaintiff did not suffer any condition that qualifies as a disability under the ADA while employed at FedEx Ground or at the time of his termination in 2011. In Clark, the plaintiff suffered a torn ACL on June 5, 2009. Clark, 2012 U.S. Dist. LEXIS, at *3. Over three months later, her doctor wrote a note stating that she could "not participate in excessive exercise" due to her ACL injury. Id. at *4-5, fn. 3. The court acknowledged the purpose of the 2008 Amendments. Id. at *18-19. Nonetheless, the court noted that while plaintiff "had physical impairments that limited her ability to engage in certain activities, merely having an impairment does not make one disabled for purposes of the ADA." Id. at *18. In Morgan, plaintiff tore her ACL and worked under a work accommodation for 2 months. Morgan, 2013 U.S. Dist. LEXIS 178769, at *7. Plaintiff underwent surgery, missed work for two weeks, and worked under an accommodation for approximately five months. Id. at *7-8. In this post-Amendment case, the court determined that plaintiff's "physical limitations and work restrictions" were temporary impairments and did not qualify as a disability under the ADA. Id. at *12-15. Similarly here, Plaintiff was back working at both of his jobs (Yankee Clipper and FedEx Ground) about two

weeks after he tore his ACL.  Most importantly, Plaintiff was on a full schedule (which was approximately full time hours) and under no accommodation when he returned to Yankee Clipper. Congress did not intend to afford ADA protections to Plaintiff's torn ACL and resultant temporary impairment.  See Koller, 850 F. Supp. 2d at 513.  Plaintiff suffered no ADA disability.

### 4. Plaintiff's post-surgical physical condition is irrelevant.  Nonetheless, Plaintiff did not suffer from any disability after his December 2010 ACL reconstruction surgery.

Indeed, Plaintiff did not suffer any disability after his ACL reconstruction surgery on December 28, 2010 either.  However, to be clear, for purposes of this litigation, Plaintiff's post-surgery medical condition is irrelevant.  "[A]n individual does not have an actual disability under the ADA unless she is disabled at the time of the adverse employment action: '[a]n action for employment discrimination brought pursuant to the . . . ADA, is properly resolved by granting summary judgment to the defendant employer where the plaintiff was not a handicapped or disabled person within the meaning of the acts at the time of the adverse employment decision.'" McCowan v. HSBC Bank USA, 689 F. Supp. 2d 390, 400 (E.D.N.Y. 2010) (citing Joyce v. Suffolk County, 911 F. Supp. 92, 98 (E.D.N.Y. 1996)). There is no evidence that FedEx Ground was aware of Plaintiff's post-surgical medical condition because Plaintiff never returned to work at FedEx Ground after his surgery.  Also, there is no evidence that Plaintiff ever informed FedEx Ground of his post-surgery physical condition.

Assuming *arguendo* that Plaintiff's post-surgical physical condition is relevant, the evidence establishes that Plaintiff did not suffer any disability after his ACL reconstruction surgery.  After his surgery, Plaintiff went to physical therapy. (Taylor Depo. 30:18 – 31:19). Plaintiff also went for follow up visits at Dr. Veltri's office (Id.; P69-71).  The medical records reveal that Plaintiff's condition was good following his surgery.  (P69-71).  Moreover, Plaintiff

testified that he worked at Yankee Clipper through early 2011, which would be after his surgery. (Taylor Depo. 34:16-18).  Yankee Clipper fired Plaintiff for "clipping" a bookcase while driving a forklift. (Taylor Depo. 31:25 – 32:25).  So Plaintiff was sufficiently recovered after his surgery that he was working for Yankee Clipper, he was driving a forklift and clipped a bookcase resulting in his termination.  Thereafter, in 2011, Plaintiff went to work at IFCO at a "physical job" that sometimes required him to manually lift pallets. (Taylor Depo. 34:4 – 35:23).  While working full-time at IFCO, Plaintiff picked up a second job at Community Residences (CRI) in 2012. (Taylor Depo. 35:22 – 36:16).  Indeed, nothing in the record indicates Plaintiff suffered from a disability after his surgery.

### III.    Plaintiff's Testimony Indicates That No Purportedly Requested Accommodation Was Denied Him.

Plaintiff asserts a failure to accommodate claim as his second claim against FedEx Ground. (Amended Complaint, p. 7).  However, the Amended Complaint does not identify any requested accommodation that FedEx Ground purportedly refused to provide.  The Amended Complaint states that "Plaintiff worked under a light duty designation" after he tore his ACL. Amended Complaint, ¶26.  Plaintiff also testified that he worked light duty after his injury. (Taylor Depo. 67:2 – 68:15; 86:19 – 87:21).  There is no evidence of any other request from Plaintiff for any other accommodation.  Indeed, "[a]n underlying assumption of any reasonable accommodation claim is that the plaintiff employee has requested an accommodation." Graves, 457 F.3d at 184-185 (quoting Flemmings v. Howard Univ., 198 F.3d 857, 861 (D.C. Cir. 1999)).  "The employee possesses the initial responsibility to inform the employer that she needs an accommodation, and to identify the limitation that needs accommodating." Mendillo v. Prudential Ins. Co. of America, 156 F. Supp. 3d 317, 342 (D. Conn. 2016).  "Summary judgment is appropriate where a plaintiff fails to identify a facially reasonable accommodation that the defendant refused to provide or when

the employer offers an accommodation that is plainly reasonable." <u>McMiller v. Precision Metal Products, Inc.</u>, No. 3:13cv577, 2015 U.S. Dist. LEXIS 107785, at *31 (D. Conn. Aug. 17, 2015) (citing <u>Howard v. United Parcel Serv., Inc.</u>, 101 F. Supp. 3d 343, 352 (S.D.N.Y. 2015).

As such, there is no evidence that Plaintiff requested any accommodation that FedEx Ground denied.  Plaintiff's Second Claim fails for this additional reason.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion for summary judgment should be granted, and plaintiff's Complaint dismissed in its entirety, with prejudice.

Respectfully submitted,

DEFENDANT,
FEDEX GROUND PACKAGE SYSTEM, INC.


By:       /s/*Arun J. Thomas*_____
          Lawrence Peikes (ct07913)
          lpeikes@wiggin.com
          WIGGIN AND DANA LLP
          Two Stamford Plaza
          281 Tresser Boulevard
          Stamford, CT 06901
          (203) 363-7690
          (203) 363-7676 (fax)

          Arun J. Thomas, *pro hac vice*
          arun.thomas@fedex.com
          FedEx Ground Package System, Inc.
          100 FedEx Drive
          Moon Township, PA 151508
          (412) 747-4345
          (412) 747-8496 (fax)

          *Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on this 14th day of April, 2017, the foregoing Memorandum of Law in Support of Defendant's Motion for Summary Judgment was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

/s/ *Arun J. Thomas*
Arun J. Thomas (*pro hac vice*)