## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LAVON TAYLOR, | : | |
| Plaintiff, | : | CIVIL CASE NO. |
| | : | 3:16-CV-402 (JCH) |
| v. | : | |
| | : | |
| FEDEX GROUND PACKAGE SYSTEM, | : | |
| INC., | : | FEBRUARY 26, 2018 |
| Defendant. | : | |
| | : | |

### RULING RE: MOTION FOR SUMMARY JUDGMENT (DOC. NO. 31)

## I.  INTRODUCTION

Plaintiff Lavon Taylor ("Taylor") brings this action against his former employer,

FedEx Ground Package System, Inc. ("FedEx"), for discrimination on the basis of

disability and failure to accommodate in violation of the Americans with Disabilities Act

("ADA").  FedEx has moved for summary judgment on both counts.  (Doc. No. 31).  For

the reasons that follow, FedEx's Motion for Summary Judgment is denied.

## II.  FACTUAL BACKGROUND

FedEx hired Taylor as a part-time package handler on July 30, 2007.  Local Rule

56(a)1 Statement ("L.R. 56(a)1 Stat.") (Doc. No. 33) at ¶ 1; Local Rule 56(a)2 Statement

("L.R. 56(a)2 Stat.") (Doc. No. 36-3) at ¶ 1.  From 2010 to 2011, Taylor also worked full-

time at Yankee Clipper driving a forklift, helping to sort books, and performing minor

maintenance on the forklift.  L.R. 56(a)1 Stat. at ¶¶ 4–6; L.R. 56(a)1 Stat. at ¶¶ 4–6.  On

March 19, 2010, Taylor injured his knee while playing basketball.  L.R. 56(a)1 Stat. at ¶¶

7–8; L.R. 56(a)2 Stat. at ¶¶ 7–8.  The next day, Taylor visited the Emergency Room,

where he was diagnosed with a torn anterior cruciate ligament ("ACL") and referred to a

specialist.  Lavon Taylor Depo. (Feb. 23, 2017), Ex. P1 (Doc. No. 39) at 28.  At an

appointment the following week, the specialist, Dr. Daniel Veltri, gave Taylor a note advising that he not engage in lifting or certain kinds of bending and recommended that Taylor arrange to have surgery to repair his ACL. L.R. 56(a)2 Stat., Disputed Facts at ¶ 5. Taylor, using crutches at the time, brought the note to both of his employers—FedEx and Yankee Clipper—in order to take time away from work to recuperate. L.R. 56(a)2 Stat., Disputed Facts at ¶ 4; L.R. 56(a)1 Stat. at ¶¶ 13, 15. After two weeks treating his knee with medication and icing, Taylor returned to work at Yankee Clipper on a full schedule without accommodations and resumed work at FedEx on light duty. L.R. 56(a)1 Stat. at ¶¶ 13–15; L.R. 56(a)2 Stat. at ¶¶ 13–15; L.R. 56(a)2 Stat., Disputed Facts at ¶ 11.

FedEx terminated Taylor's employment on June 18, 2010. L.R. 56(a)1 Stat. at ¶¶ 22–23; L.R. 56(a)2 Stat. at ¶¶ 22–23. The parties dispute the circumstances leading up to the June 18, 2010 termination. According to FedEx, Taylor stopped attending work on June 18, 2010, and was terminated on July 11, 2010. L.R. 56(a)1 Stat. at ¶ 21–22. According to Taylor, he went to FedEx to provide a doctor's note and, when he later called to update FedEx on his status, he was told that he had been terminated. L.R. 56(a)2 Stat. at ¶ 15.[1] The parties agree that, upon learning of his termination, Taylor reapplied for a part-time package handler position with FedEx and began work on October 6, 2010. L.R. 56(a)1 Stat. at 24–25.

---

[1] The only doctor's note Taylor describes is the one he gave to FedEx while he was on crutches no more than a week after his injury in March. L.R. 56(a)2 Stat., Disputed Facts at ¶ 4; Pl.'s Ex. 1 at 72:6–11. Given that Taylor admits that he returned to work approximately two weeks after his injury, L.R. 56(a)2 Stat. at ¶ 15, and his Earnings History Report reflects his attendance at work in April, May, and the first half of June, L.R. 56(a)1, Ex. B, at 40–41 (Doc. No. 33-3), the doctor's note Taylor provided in late March could not have explained his absence in June, three months later.

After returning to FedEx in October, Taylor worked light duty. L.R. 56(a)2 Stat., Disputed Facts ¶ 11. Taylor stopped attending work on December 27, 2010, and underwent surgery to repair his torn ACL on December 28, 2010. LR. 56(a)1 Stat. at ¶¶ 26, 28; L.R. 56(a)2 Stat. at ¶¶ 26, 28. Taylor states that he told his supervisor, Jeff O'Connor, the date of his surgery, L.R. 56(a)2 Stat., Disputed Facts at ¶ 18, while FedEx states that Taylor stopped attending work without requesting medical leave, LR. 56(a)1 Stat. at ¶ 26; Def.'s Mem. at 4 n.2 . FedEx terminated Taylor's employment on January 4, 2011. L.R. 56(a)1 Stat. at ¶ 27; L.R. 56(a)2 Stat. at ¶ 27.

After his surgery, Taylor could not bear weight on his right knee. L.R. 56(a)2 Stat., Disputed Facts at ¶ 28. On February 18, 2011, Matthew Sobolewski, a physician's assistant in Dr. Veltri's office, noted that Taylor was unable to squat, lift greater than five pounds, crawl, climb, kneel, bend, twist, or engage in any strenuous exercises. Id. at ¶ 30. In early 2011, after resuming work at Yankee Clipper, Taylor was terminated for clipping a bookcase while driving a forklift. L.R. 56(a)1 Stat. at ¶¶ 38–39; L.R. 56(a)2 Stat. at ¶¶ 38–39.[2] Around November 2011, Taylor began work as a forklift driver at IFCO, a pallet warehouse. LR. 56(a)1 Stat. at ¶¶ 40–41; L.R. 56(a)2 Stat. at ¶¶ 40–41.

## III. LEGAL STANDARD

On a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that the party is

---

[2] Taylor denies that he was terminated from Yankee Clipper in "early 2011" and cites page 32 of his deposition testimony, in which he testified that he was unsure when he was let go from Yankee Clipper. L.R. 56(a)2 Stat. at ¶ 38. However, after stating that he began a job at IFCO around November 2011—after about 10 months of unemployment following his termination from Yankee Clipper—Taylor acknowledged that he was terminated from Yankee Clipper at the beginning of 2011. See Def.'s Ex. 2, Taylor Depo. at 34.

3

entitled to judgment as a matter of law.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 71–72 (2d Cir. 2016). Once the moving party has met its burden, in order to defeat the motion, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 256, and present "such proof as would allow a reasonable juror to return a verdict in [its] favor," Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).  "An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Cross Commerce Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016).

In assessing the record to determine whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought."  LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 175 (2d Cir. 1995).  "Where it is clear that no rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight,' summary judgment should be granted."  F.D.I.C. v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010) (quoting Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994)).  On the other hand, where "reasonable minds could differ as to the import of the evidence," the question must be left to the finder of fact.  Cortes v. MTA N.Y. City Transit, 802 F.3d 226, 230 (2d Cir. 2015) (quoting R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997)).

**IV. DISCUSSION**

A. ADA: Disability Discrimination

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring,

advancement, or discharge of employees, employee compensation, job training, and

other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  To

establish a claim for disability discrimination, a plaintiff must show that "(1) his employer

is subject to the ADA; (2) he was disabled within the meaning of the ADA; (3) he was

otherwise qualified to perform the essential functions of his job, with or without

reasonable accommodation; and (4) he suffered adverse employment action because of

his disability."  McMillan v. City of New York, 711 F.3d 120, 125 (2d Cir. 2013) (quoting

Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 169 (2d Cir. 2006)).  FedEx has moved for

summary judgment on the basis that Taylor has failed to establish that he was disabled

under the ADA.[3]  See Def.'s Mem. at 1.

    Courts apply a three-step approach to determine whether an individual is

disabled under the ADA:  "[The] plaintiff must first show that [ ]he suffers from a physical

or mental impairment.  Second, [he] must identify the activity claimed to be impaired

and establish that it constitutes a major life activity.  Third, the plaintiff must show that

h[is] impairment substantially limits the major life activity previously identified."

Hernandez v. Int'l Shoppes, LLC, 100 F. Supp. 3d 232, 257 (E.D.N.Y. 2015) (quoting

Weixel v. Bd. of Educ. Of City of N.Y., 287 F.3d 138, 147 (2d Cir. 2002)).  The EEOC

defines a "physical or mental impairment" under the ADA as: "Any physiological

disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more

of the following body systems: neurological, musculoskeletal . . . ."  29 C.F.R. §

1630.2(h)(1).  The ADA, as amended by the ADA Amendment Act of 2008 ("ADAAA"),

---

[3] FedEx does not contest that, as an employer with fifteen or more employees, it is subject to the ADA.  42 U.S.C. § 12111(5)(A).

includes, "caring for oneself, performing manual tasks . . . walking, standing, lifting, bending, speaking, breathing . . . and working" as major life activities. Pub. L. No. 110-325, § 3(2)(A) (2008) (Definition of Disability). An impairment is a disability within the meaning of the statute when "it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii).

FedEx argues that a torn ACL does not qualify as a disability under the ADA and that Taylor's own medical records and work history show that he was not disabled at the time of his termination. Mem. of Law in Supp. of Def.'s Mot. for Summ. J. ("Def.'s Mem.") (Doc. No. 32) at 9–13. Taylor argues that his condition after his injury, his assignment to light duty, and his condition when he left for and following his surgery create a genuine issue of material fact as to whether he was disabled at the time of his termination. Pl.'s Obj. to Def.'s Mot. for Summ. J. ("Pl.'s Obj.") (Doc. No. 36) at 5–10.

The ADAAA broadened the definition of disability, 42 U.S.C. § 12102(4)(A), and clarified that temporary injuries may qualify as disabilities, 29 C.F.R. § 1630.2(j)(1)(ix). EEOC regulations provide that "the threshold issue of whether an impairment 'substantially limits' a major life activity should not demand extensive analysis," and the term "shall be interpreted and applied to require a degree of functional limitation that is lower than the standard for 'substantially limits' applied" previously. 29 C.F.R. § 1630.2(j)(1)(iii)–(iv). The appendix to the EEOC regulations indicates that the "duration of an impairment is one factor that is relevant in determining whether the impairment substantially limits a major life activity. Impairments that last only for a short period of time are typically not covered, although they may be covered if sufficiently severe." 29

C.F.R. pt. 1630.2(j)(1)(ix)(app.) (internal quotation marks and citations omitted).  The appendix illustrates how the regulations should be applied with the following example: "[I]f an individual has a back impairment that results in a 20-pound lifting restriction that lasts for several months, he is substantially limited in the major life activity of lifting, and therefore covered under the first prong of the definition of disability."  Id.

The court concludes that Taylor has raised a genuine issue of material fact that his ACL tear rendered him disabled under the ADA.  Given the treatment notes establishing that Taylor tore his ACL, Taylor's testimony about his limitations while working at FedEx after his injury, and the treatment notes detailing Taylor's condition after his surgery, a reasonable juror could find that Taylor's injury substantially limited the major life activities of lifting and bending.[4]  See Matthews v. Pa. Dep't of Corr., 613 Fed. App'x 163, 168–69 (3d Cir. 2015) (unpublished) (finding that a plaintiff who alleged that an impairment compromised his walking ability for several months had adequately pled a disability under the ADAAA); Summers v. Altarum Instit., Corp., 740 F.3d 325, 330 (4th Cir. 2014) (holding that a plaintiff who was unable to walk for seven months was disabled under the ADAAA).

In Summers, the Fourth Circuit held that a temporary injury can qualify as a disability under the ADAAA.  See Summers, 740 F.3d at 329.  The Fourth Circuit reasoned that, "[i]f, as the EEOC has concluded, a person who cannot lift more than twenty pounds for several months is sufficiently impaired to be disabled within the

_____

[4] In his Amended Complaint, Taylor alleged that his "knee condition substantially limits one or more major life activity including walking and standing."  Am. Compl. (Doc. No. 10) at ¶ 9.  In Plaintiff's Objection to FedEx's Motion for Summary Judgment, Taylor did not identify what major life activity he claimed was impaired.  However, in the course of his argument, Taylor referred to limitations on lifting, squatting, bending, pivoting, kneeling, and bending.  See Pl.'s Mem. at 9–10.

meaning of the amended Act, then surely a person whose broken legs and injured tendons render him completely immobile for more than seven months is also disabled." Id. at 330 (internal quotation marks and citations omitted).  In the instant case, Taylor testified that he told his supervisors that his knee injury prevented him from lifting packages and pivoting to load trucks.  See Pl.'s Ex. 1 at 89.  As a result, Taylor was assigned to light duty, where he was able to lift and toss smaller, bagged packages. See id. at 95–96.  Resolving all ambiguities in favor of the non-moving party, Taylor has provided sufficient evidence to prove that the limitation on his lifting ability was comparable to the 20-pound restriction in the EEOC regulation.  Moreover, a reasonable juror could infer that, while not consistently as severe as the periods immediately following his injury and surgery, Taylor's impairments lasted for nearly a year: from March 19, 2010—the date of Taylor's injury—until at least February 18, 2011—the date of Taylor's last medical record.  Thus, while it is a close call, the court finds that Taylor has raised a genuine issue of material fact regarding whether his knee injury was a disability.[5]

FedEx argues that non-chronic knee injuries are not disabilities under the ADA. See Pl.'s Mem. at 9.  FedEx cites two sets of cases for this proposition.  The first group of cases were decided before the 2008 Amendment to the ADA, and were therefore based on an overly stringent standard for disability that Congress expressly rejected with the passage of the ADAAA.  See Pub. L. No. 110-325, § 2(a)(5)–(6) (2008)

---

[5] Although Taylor has provided just enough evidence to raise a genuine issue of material fact that must be resolved by a jury, Taylor may have been able to clear the summary judgment hurdle by more than a whisker if he had submitted additional evidence beyond his deposition testimony.  At the very least, Taylor should have submitted an affidavit describing how his knee injury restricted his movements.

(Findings and Purposes) (rejecting the reasoning in Supreme Court cases that "narrowed the broad scope of protection intended to be afforded by the ADA" and led lower courts to incorrectly find in "individual cases that people with a range of substantially limiting impairments are not people with disabilities.")  The second set of cases were decided after 2008, but this court does not find the facts of those cases analogous to the instant case or their reasoning persuasive due to reliance on pre-ADAAA cases.  Even though Morgan v. Goodwill Indus. of Denver, Inc., No. 12-cv-00274-WYD-CBS, 2013 WL 6728777 (D. Col. Dec. 20, 2013), was decided after the passage of the ADAAA, it relied on pre-ADAAA cases for the principle that "an employee is not disabled where the impairment was temporary or short-term."  Id. at *5. In addition, unlike the plaintiff in the instant case, the plaintiff in Morgan failed to identify a major life activity that was effected by her ACL injury.  Id. at *6.

 In Clark v. W. Tidewater Reg'l Jail Auth., No. 2:11-CV-228, 2012 WL 253108 (E.D. Va. Jan 26, 2012), the court determined that the plaintiff's ACL tear did not qualify as a disability under the ADA because excessive exercise is not a major life activity and a three week restriction on the plaintiff's ability to stand for prolonged periods of time was not a substantial limitation on the major life activity of standing.  Id. at *7.  The facts of Clark differ from the instant case, where Taylor has provided evidence of substantial limitations on the major life activity of lifting that continued for many months.  Finally, in Koller v. Riley Riper Hollin & Colagreco, 850 F. Supp. 2d 502 (E.D. Pa. 2012), the plaintiff alleged that pain and medication after his ACL reconstruction diminished his ability to stay awake at work and that, although he was able to commute to work, he did so despite difficulty moving and driving because of the cast on his knee.  Id. at 513–14.

The court noted that the plaintiff made "no allegations regarding his physical condition at the time of his termination." Id. at 514.[6]

FedEx also argues that, assuming ACL injuries may qualify as disabilities under the ADA, Taylor's own testimony and medical records establish that his injury was not a disability. See Def.'s Mem. at 10–13. FedEx argues that Taylor's return to his job at Yankee Clipper two weeks after his injury without accommodations and his return to FedEx show that he was not disabled. See id. at 10. Additionally, FedEx argues, Dr. Veltri did not conclude that Taylor required surgery, only that he should consider it because of the physical strain of his job. See Def.'s Reply to Pl.'s Obj. to Def.'s Mot. for Summ. J. ("Reply") (Doc. No. 37) at 4–5. FedEx notes that Dr. Veltri only recommended that Taylor stop playing sports and, although Taylor had some pain and swelling, he did not have instability or other major complaints. See id. at 4. However, the work Taylor performed at Yankee Clipper—controlling a forklift, supervising other workers, sorting books, and performing minor maintenance on his forklift—and his light duty functions at FedEx are consistent with substantial limitations on lifting and bending. Also, a reasonable juror could determine that Dr. Veltri's focus on the strenuous nature of Taylor's work and recreational activities do not foreclose a finding that Taylor's injury

---

[6] Multiple courts in this Circuit have held that temporary, short-term impairments are not disabilities under the ADA. See, e.g., Holmes v. N.Y.C. Dep't of City Wide Admin. Servs., No. 14 Civ. 8289, 2015 WL 1958941, at *4 (S.D.N.Y. Apr. 30, 2015) ("Holmes' right knee injury is a temporary, transitory impairment that does not qualify as a disability under the ADA."); Nadel v. Shinseki, 57 F. Supp. 3d 288, 296 (S.D.N.Y. 2014 (granting summary judgment where the evidence showed that Plaintiff's knee injury was temporary and lasted fourteen weeks); Zick v. Waterfront Com'n of New York Harbor, No. 11 Civ. 5093 (CM), 2012 WL 4785703, at *4–*5 (October 4, 2012) (dismissing ADA claim where plaintiff failed to allege that her broken leg was more than temporary). Because these courts relied on cases that predated the ADAAA and conflict with current EEOC regulations, this court does not follow their reasoning.

substantially limited his ability to lift or bend as compared to most people in the general population.

Finally, FedEx argues that Taylor's limitations after his ACL surgery are irrelevant to the question of whether he was disabled at the time he was terminated.  See Def.'s Mem. at 12–13.  FedEx states that it was unaware of Taylor's post-surgical medical condition because Taylor did not return to work at FedEx after his surgery.  See id. at 12.  However, FedEx's knowledge does not bear on the court's determination of whether Taylor had an actual disability, which is based on his disability "at the time of the adverse employment action."  McCowan v. HSBC Bank USA, 689 F. Supp. 2d 390, 400 (E.D.N.Y. 2010).  Only at a later step in the disability discrimination analysis—after the threshold question of disability—does the court look at what the employer knew in order to determine whether the adverse employment action was caused by the plaintiff's disability.  See McMillan v. City of New York, 711 F.3d 120, 125 (2d Cir. 2013) (delineating the four steps of a prima facie case under the ADA).

Thus, the court concludes that Taylor has raised a genuine issue of material fact whether his ACL injury qualifies as a disability under the ADA.[7]  FedEx's Motion for Summary Judgment on Count One is denied.

B.  ADA: Reasonable Accommodation

To establish a claim for failure to afford a reasonable accommodation under the ADA, a plaintiff must show that "(1) [he] is a person with a disability under the meaning

---

[7] FedEx does not address the other prongs of Taylor's disability discrimination claim: whether "he was otherwise qualified to perform the essential functions of his job, with or without reasonable accommodation," and whether "he suffered adverse employment action because of his disability." McMillan, 711 F. 3d at 125.

of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation [the employee] could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." Noll v. Int'l Bus. Mach. Corp., 787 F.3d 89, 94 (2d Cir. 2015) (quoting McBride v. BIC Consumer Prods. Mfg. Co., Inc., 583 F.3d 92, 97 (2d Cir. 2009)).  FedEx argues that there is no evidence that plaintiff requested an accommodation.  See Def.'s Mem. at 13. Taylor argues that FedEx denied him a reasonable accommodation in the form of leave from his employment to recover from his ACL surgery.  See Pl.'s Mem. at 10.

The court concludes that Taylor has raised a genuine issue of material fact that he requested an accommodation.  At his deposition, Taylor stated that he told his supervisor, Jeff O'Connor, about his surgery date and his doctor's prediction of a six-month recovery, although he would try to return in half the time.  See Pl.'s Ex. 1 at 68, 104, 110–11.  Taylor testified that O'Connor assured him that his job would be waiting for him when he returned.  See id. at 68, 104.  Taylor further testified that his supervisors did not mention a process for filling paperwork for medical leave.  See id. at 127.  At physical therapy following his surgery, Taylor was told that there was a problem with his insurance.  See id.  When he called his insurance company, it informed him that he was no longer employed by FedEx.  See id.

FedEx argues that there is no evidence that Taylor requested an accommodation other than the light duty he worked after his injury.[8]  However, the court concludes that,

---

[8] In Count Two of Taylor's Amended Complaint, Taylor alleged only that FedEx violated the ADA "by failing to accommodate the plaintiff."  Thus, FedEx was not on notice of what accommodation Taylor claimed he was denied when FedEx filed its Memorandum in Support of its Motion for Summary Judgment.  However, in Taylor's Objection to FedEx's Motion, Taylor argued that he had been denied a requested accommodation of medical leave.  Subsequently, FedEx made no mention of Taylor's failure to accommodate claim in its Reply.

based on Taylor's testimony, a reasonable jury could find that Taylor requested an accommodation.  See Graves v. Finch Pruyn & Co., Inc., 457 F.3d 181, 185 (2d Cir. 2006) (finding that a reasonable jury could infer that plaintiff made his employer aware of his need for time off work in order to see a foot specialist even though plaintiff's discussion with an HR manager ended without an explicit request for unpaid leave).  The EEOC regulations place the onus on the employee to inform his employer of his need for an accommodation because "an employer would not be expected to accommodate disabilities of which it is unaware."  See 29 C.F.R. pt 1630.9 (app.).  However, "[a]n employee need not mention the ADA or even the term accommodation so long as the employer has knowledge of the disability."  Mendillo v. Prudential Ins. Co. of America, 156 F. Supp. 3d 317, 342 (D. Conn. 2016) (citations and internal quotation marks omitted).  Taylor has created a genuine issue of material fact that he informed FedEx that he needed an accommodation for his ACL surgery.

To make out a prima facie case for failure to accommodate, "the plaintiff bears only the burden of identifying an accommodation, the costs of which, facially, do not clearly exceed its benefits."  Borkowski v. Valley Cent. Sch. Dist., 63 F.3d 131, 138 (2d Cir. 1995).  The plaintiff's burden is "not a heavy one," but permits "district courts to grant summary judgments for defendants in cases in which the plaintiff's proposal is either clearly ineffective or outlandishly costly."  Id. at 138–39.  The Second Circuit has "never resolved the question of whether paid or unpaid leave can constitute a reasonable accommodation under the ADA."  Green v. Cellco P'ship, 218 F. Supp. 3d 157, 164 (D. Conn. 2016) (quoting Petrone v. Hampton Bays Union Free School Dist., 568 Fed. App'x 5, 7 n.2 (2d Cir. 2014)).  However, most other circuits and the EEOC

have concluded that, under certain circumstance, a finite term of medical leave may constitute a reasonable accommodation.  See Graves, 457 F.3d at 185, n.5.  The court concludes that Taylor has met his initial burden of suggesting a plausible accommodation.  See McMillan, 711 F.3d 120 at 127.[9]

FedEx's Motion for Summary Judgment on Count Two is therefore denied.

## V.  CONCLUSION

For the foregoing reasons, FedEx's Motion for Summary Judgment is denied.

## SO ORDERED.

Dated at New Haven, Connecticut this 26th day of February, 2018.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge

---

[9] FedEx does not contend that Taylor's proposed accommodation was unreasonable or would have caused it to suffer an undue hardship.  See Borkowski, 63 F.3d at 138.

14